**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

|  |  |  |
|---|---|---|
| RANNA PATEL, | * | |
| Plaintiff, | * | |
| v. | * | Case No.: PWG-12-880 |
| UNITED OF OMAHA LIFE INSURANCE CO., | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

This Memorandum Opinion and Order addresses and disposes of the Motion for Summary Judgment that Plaintiff Ranna Patel filed, ECF No. 17, along with a Memorandum of Points and Authorities, ECF No. 17-1; the Opposition to Plaintiff's Motion for Summary Judgment and Cross-Motion for Summary Judgment that Defendant United of Omaha Life Insurance Co. ("United of Omaha") filed, ECF No. 18, along with a Memorandum in Support, ECF No. 18-1; Plaintiff's Reply to Defendant's Opposition and Opposition to Defendant's Motion, ECF No. 19; and Defendant's Reply to Plaintiff's Opposition, ECF No. 22. I find that a hearing is unnecessary in this case. *See* Loc. R. 105.6. For the reasons stated herein, Plaintiff's Motion for Summary Judgment is DENIED, Defendant's Cross-Motion for Summary Judgment is DENIED, and this matter is REMANDED for further administrative proceedings.

**I.   BACKGROUND**[1]

Plaintiff worked as an Account Manager for Empower IT, where she "managed an assigned group of clients within a defined territory, ensuring the client company's information/training/service needs [were] being anticipated and exceeded," beginning in mid-2006. Admin Rec. 206 & 212. Empower IT held a group long-term disability ("LTD") insurance policy ("Policy") with Defendant, who was both the administrator and the payer of the Policy. *Id.* at 7, 289–91, 815. Plaintiff enrolled in the Policy, *id.* at 815, which included the following definitions, *id.* at 101–04:

> **Disability and Disabled** means that because of an Injury or Sickness, a significant change in Your mental or physical functional capacity has occurred in which You are:
>
> (a) prevented from performing at least one of the Material Duties of Your Regular Occupation on a part-time or full-time basis; and
>
> (b) unable to generate Current Earnings which exceed 99% of Your Basic Monthly Earnings due to that same Injury or Sickness.
>
> . . .
>
> **Material Duties** means the essential tasks, functions, and operations relating to an occupation that cannot be reasonably omitted or modified. In no event will We consider working an average of more than 40 hours per week in itself to be a part of material duties. One of the material duties of Your Regular Occupation is the ability to work for an employer on a full-time basis.
>
> **Regular Occupation** means the occupation You are routinely performing when Your Disability begins. Your regular occupation is not limited to the specific position You held with the Policyholder, but will instead be considered to be a similar position or activity based on job descriptions included in the *most current edition* of the U.S. Department of Labor Dictionary of Occupational Titles (DOT).

---

[1] In reviewing the evidence related to a motion for summary judgment, the Court considers the facts in the light most favorable to the non-moving party. *Ricci v. DeStefano*, 129 S. Ct. 2658, 2677 (U.S. 2009); *George & Co., LLC v. Imagination Entm't Ltd.*, 575 F.3d 383, 391–92 (4th Cir. 2009); *Dean v. Martinez*, 336 F. Supp. 2d 477, 480 (D. Md. 2004). The background provided here is comprised of facts found in the Administrative Record, *see Giles v. Bert Bell/Pete Rozelle NFL Player Retirement Plan*, No. ELH-12-634, 2012 WL 5882587, at *12 (D. Md. Nov. 20, 2012), which the parties submitted as a joint exhibit. Pl.'s Mem. Ex. 1, ECF No. 17-4; Def.'s Mot. 3–4.

> We have the right to substitute or replace the DOT with a service or other information that We determine of comparable purpose, with or without notice. To determine Your regular occupation, We will look at Your occupation as it is normally performed in the national economy, instead of how work tasks are performed for a specific employer, at a specific location, or in a specific area or region.
>
> . . .
>
> **Sickness** means a disease, disorder or condition, including pregnancy, for which you are under the care of a Physician. Disability must begin while you are insured under the Policy.

According to Empower IT, Plaintiff "use[d] the computer continuously" (67-100% of the time) with both hands as an Account Manager. *Id.* at 817. Her position also required frequent (34-66% of the time) sitting and occasional (0-33% of the time) reaching overhead. *Id.* However, the job description that Empower IT provided did not mention computer use. *See id.* at 212–14. Defendant defined Plaintiff's position, which was not listed in the DOT, using the DOT definition of "Sales Representative, Data Processing Services," a "light physical demand occupation" that was the "most closely related" position. *Id.* at 901. The position calls for occasional reaching above the shoulder, occasional handling (pushing and pulling) and no fingering. *Id.* at 902. Noting that the definition had not been updated since 1986, Defendant concluded that an individual in Plaintiff's position "would have the occasional need to finger." *Id.* at 910.

Plaintiff stopped working in December 2009 due to "tendinitis/impingement in right shoulder – rotator cuff" that "first appeared [in] Nov[.] [20]08." Admin. Rec. 207. At that time, Plaintiff applied for short-term disability benefits through the Policy. *Id.* at 275. Plaintiff submitted a December 2009 statement from her attending physician, Bruce Knolmayer, M.D., an orthopedic surgeon, in support of her claim. *Id.* at 210–11. Dr. Knolmayer had diagnosed Plaintiff with "right rotator cuff and biceps tendinitis," acromioclavicular ("AC") joint arthritis,

and "rheumatoid arthritis/right knee pain" in August 2009, but rheumatoid arthritis was not part of the December 2009 diagnosis. *Id.* at 465–66. Rather, Dr. Knolmayer observed that Plaintiff had pain and limited motion in her right shoulder and diagnosed her with right rotator cuff tendinitis and AC joint arthritis. *Id.* at 210; *see also id.* at 467. He stated that Plaintiff had surgery in December 2009 and could not work, but she would be able to work again in one to three months. *Id.* at 210–11. Plaintiff was awarded short-term disability benefits beginning in December 2009. *Id.* at 275. The benefits were extended in January and February 2010. *Id.* at 236 & 250.

Plaintiff applied for LTD benefits in April 2010, and Empower IT submitted an Employer's Statement, payroll records, and a job description on Plaintiff's behalf. *Id.* at 814–17. Neither Plaintiff nor Defendant identifies what documents Plaintiff submitted in support of her application. Defendant awarded Plaintiff LTD benefits on May 13, 2010, "[b]ased upon the documentation currently in [her] file." *Id.* at 289–91.

Beginning in October 2010, Defendant reevaluated Plaintiff's condition through a letter to her supervisor, who had not seen her since January 2010; surveillance, during which "the private investigators did not find Ms. Patel performing any activity outside her home"; and a February 2011 examination by an orthopedic surgeon, Frank Seinsheimer, M.D., who opined that Plaintiff "should be capable of doing a job which involves keyboarding up to 75% of the time and be unable to do a job which requires continuous keyboarding for 8 hours a day." Admin. Rec. 349. Dr. Seinsheimer also opined that there was "no clinical evidence of active rheumatoid arthritis, no evidence of joint synovitis, or extensor tenosynovitis." *Id.*

Defendant had an internal medical consultant, Thomas Reeder, M.D., review the medical records and evidence in March 2011. Admin. Rec. 867. He noted that her range of motion in a

February 2011 examination "was less than what had been recorded on three occasions in 2010," but he attributed this to "lack of effort and symptom magnification." *Id.* at 870. Dr. Reeder stated that Plaintiff's "severe pain complaints" were "not consistent" with the fact that she was "not taking prescription pain or anti-inflammatory medications." *Id.* He agreed with the restrictions Dr. Seinsheimer recommended and concluded that Plaintiff's "true shoulder range of motion most likely exceeds what was documented at the time of the 2/8/11 independent medical examination"; Plaintiff did not have "active rheumatoid arthritis"; and "activities described by [Plaintiff] including reading, walking, driving, light exercises, folding laundry, transferring laundry from washer to dryer, and dressing herself [were] consistent with full-time work of a light nature." *Id.*

Douglas Palmer, MS, CRC, CDMS, a certified rehabilitation counselor, reviewed Plaintiff's records, an April 2010 occupational analysis, Plaintiff's job description, Empower IT's statement, the 1991 edition of the DOT, the OASYS program, and the 2010-2011 Occupational Outlook Handbook to clarify the "keyboarding requirements of the occupation." Admin. Rec. 909. Palmer agreed with the April 2010 occupational analysis that "sales representative, data processing services, (DOT Code: 251.157-014) would be an accurate comparison" to Plaintiff's position, such that her position is "Light exertion," which requires "exerting . . . a negligible amount of force constantly to lift, carry, push, pull, or otherwise move objects," and "the occasional need to use upper extremities for reaching and/or handling items." *Id.* at 910. He observed that, although "[t]here is no indication that in order to perform the material duties of this occupation that fingering, (which includes keyboarding) is typically required[,] . . . the last time this occupation was updated was 1986," and "the need to complete paperwork would suggest some level of fingering would be required," such that "it would appear

reasonable that in order to successfully perform all the job related tasks a person would have the occasional need to finger." *Id.*

Defendant concluded that Plaintiff's "current conditions of right rotator cuff tendinitis, acromioclavicular (AC) joint arthritis and rheumatoid arthritis do not support total disability," because Plaintiff could "perform[] the material duties of [her] light occupation as an Account Manager . . . within the[] restrictions and limitations" that Dr. Seinsheimer identified, i.e., keyboarding no more than 75% of the time and not keyboarding continuously for an eight-hour workday. *Id.* at 526, 529–30. Defendant terminated Plaintiff's LTD benefits on April 13, 2011. *Id.* at 526.

Plaintiff filed an administrative appeal in October 2011. *Id.* at 498–511. Plaintiff submitted medical records from Dr. Knolmayer, orthopedic surgeon Dr. Jonas Rudzki, rheumatologist Emma DiIorio, M.D., and certified rehabilitation counselor, Charles DeMark. Dr. Knolmayer conducted a physical examination of Plaintiff in June 2011 and concluded that she had "[c]hronic rotator cuff tendinitis, adhesive capsulitis," "[c]ervical strain," and "[r]ight medial epicondylitis elbow, cubital tunnel syndrome." *Id*. at 343. In July 2011, Dr. Knolmayer opined that Plaintiff had "[r]ight rotator cuff tendinitis, adhesive capsulitis, shoulder pain," and "[c]ervical strain, cervical disc disease," based on a physical examination he conducted and an MRI. *Id.* at 340. Dr. Rudzki evaluated Plaintiff in July 2011 and concluded that she had a "clear functional limitation of moving her extremities at or above the shoulder level and for extended period of times in the same position of sitting at a desk," and that her condition was "sufficient to create significant difficulties with a frequency that may affect approximately 50% of her ability to perform her job." *Id.* at 334. He also opined that, "[w]ith regards to reaching, handling and fingering, [Plaintiff] can perform this frequently at a level of 1/3 to 2/3 of 8 hours with her right

hand and arm." *Id.* DeMark concluded in September 2011 that Plaintiff's condition "has gotten worse" and left her "[u]nable to perform her pre-injury work as a senior account manager." *Id.* at 327 & 329.

Dr. DiIorio, whom Plaintiff visited in September 2010, observed "no joint deformity, heat, swelling, erythema or effusion. Full range of motion" in Plaintiff's right shoulder, right elbow, and right hand, as well as "mildly reduced" range of motion in Plaintiff's right shoulder. Admin. Rec. 581. Dr. DiIorio opined that Plaintiff had "no synovitis"; that her rheumatoid arthritis was a "very mild case" that was "[c]ontrolled"; and that there was bursitis in her rotator cuff that was under "Fair Control." *Id.* Plaintiff visited Dr. DiIorio twice in May 2011, at which times Dr. DiIorio reiterated her initial findings regarding Plaintiff's range of motion and noted "joint pain" and an increase in "flares." *Id.* at 353, 367 & 368. During a July 2011 visit, Dr. DiIorio again repeated her previous findings, and made the additional observation that Plaintiff's right shoulder presented "moderate pain with motion." *Id.* at 374.

> Defendant explained its process for determining whether an individual is disabled:
>
> [W]e review the medical information to determine if there are functional or cognitive impairments documents and how they would translate into restrictions and limitations. We review the records to determine your maximum work capacity and whether any noted restrictions would prevent you from performing the duties of your occupation. We also review each claim to determine if all policy provisions are complied with.

*Id.* at 306. Defendant stated that, in its consideration of Plaintiff's appeal, it relied on Palmer's "independent occupational analysis of the keyboarding requirements of [Plaintiff's] occupation of Account Manager," in particular, Palmer's conclusion that Plaintiff's position involved "the occasional need to finger" and could be compared with the position "sales representative, data processing services," as defined in the DOT. *Id.* at 306–07. Additionally, Defendant had a board certified physician, James H. Bress, M.D., conduct an Independent Record Review, and

7

Dr. Bress concluded that Plaintiff was "capable of full time work with frequent sit[ting,] stand[ing, and] walk[ing]" and "[m]aximum computer use of 75% of the day." *Id.* at 315. Based on the information that Plaintiff submitted and the additional information that Defendant gathered, Defendant denied Plaintiff's appeal on December 3, 2011. *Id.* at 305–10.

Plaintiff then filed the pending lawsuit to recover her LTD benefits under Section 1132(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001–1461. Compl. ¶ 25, ECF No. 1.

## II. PARTIES' ARGUMENTS

Plaintiff argues that Defendant abused its discretion because, "[f]or almost a year and a half, from December 2009 through April 2011, the Defendant considered Ms. Patel disabled from her regular occupation," and "[t]he Defendant has not—and cannot—point to any change or improvement in Ms. Patel's condition, documented in the medical records, from when it first allowed benefits to when it terminated them." Pl.'s Mem. 17. Plaintiff insists that "[w]ithout any change in her medical condition from the time of initial award, there was no reason *based in medicine* for terminating benefits." *Id.* at 23 (emphasis in Memorandum). According to Plaintiff, Defendant originally relied on her employer's 2009 description of her job duties, which stated that she "'use[d] the computer continuously' with 'both hands,'" and later on the 1991 DOT definition of "sales representative, data processing services," which "required only '*minimal* typing,'" to "den[y] disability by redefining Mrs. Patel's 'Regular Occupation.'" *Id.* at 23–24 (emphasis in Memorandum). Plaintiff also noted that Defendant had "a structural conflict of interest" because it "served as both administrator and payer of benefits." *Id.* at 28.

Defendant counters that "there is a lack of evidence to support that [Plaintiff] was disabled and unable to perform the material duties of her regular occupation." Def.'s Mem. 20.

Defendant asserts that it "used the current version of DOT to define Ms. Patel's position in April 2010 which was *before* the LTD award letter was sent and one year before Ms. Patel's LTD benefits were terminated." *Id.* at 22. Defendant insists that it "performed a comprehensive evaluation of all of the documents and records proffered by Plaintiff," *id.* at 21, and that "[a]ll physicians in this matter agree that Ms. Patel is able to perform computer work," *id.* at 23–24.

Plaintiff contends that Defendant should not have used the DOT to define her position because "the DOT is considered obsolete" and "the Department of Labor replaced it in 1999 with a new, on-line service called the Occupational Information Network ('O*NET')." Pl.'s Opp'n & Reply 15. Plaintiff alleges that the O*NET provides "relevant information regarding the work activities of an IT database manager," defining the position "Information Technology Manager" to involve computer use and, specifically, e-mail use, as the most common "Work Activit[ies]." *Id.* at 17.

Defendant argues that "the plain language of the Policy . . . states that Plaintiff's regular occupation will be based upon descriptions in the DOT" and Omaha "may, but is not required to, substitute a comparable service." Def's Opp'n & Reply 11. Defendant contends that, although not required, Omaha "did, in fact, consult sources other than DOT in defining Plaintiff's occupation," including OASYS, a vocational software program, and the 2010-2011 Occupational Outlook Handbook. *Id.*

### III. DISCUSSION

Summary judgment is properly granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Meson v. GATX Tech. Servs. Corp.*, 507 F.3d 803, 806 (4th Cir. 2007) (citing Fed. R. Civ. P. 56(c)). A

party "may not create a genuine issue of material fact through mere speculation, or building one inference upon another." *Miskin v. Baxter Healthcare Corp.*, 107 F. Supp. 2d 669, 671 (D. Md. 1999); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Runnenbaum v. NationsBank*, 123 F.3d 156, 163 (4th Cir. 1997).  Indeed, the existence of only a "scintilla of evidence" is not enough to defeat summary judgment. *Anderson*, 477 U.S. at 251.  Instead, the admissible evidentiary materials submitted must show facts from which the finder of fact could reasonably find in favor of the non-moving party. *Id.*  This standard applies when, as here, the parties file cross-motions for summary judgment. *Doty v. Hartford Life and Acc. Ins. Co.*, No. CCB-11-2008, 2012 WL 3065355, at *8 (D. Md. July 27, 2012).

Plaintiff properly filed this action in federal court pursuant to 29 U.S.C. § 1132(a)(1)(B), seeking "past due contractual benefits, future benefits, attorney's fees pursuant to 29 U.S.C. § 1132(g)(1), [and] costs." Compl. 5.  "Where, as here, the ERISA plan confers discretionary authority on the plan administrator, the court reviews the administrator's decision under an abuse-of-discretion standard."  *Doty*, 2012 WL 3065355, at *9; *see* Admin. Rec. 7 ("The Policyholder has delegated to Us the discretion to determine eligibility for benefits and to construe and interpret all terms and provisions of the Policy."). Under this standard, "a court is limited to the evidence in the administrative record before the plan when the plan made the decision under review." *Giles v. Bert Bell/Pete Rozelle NFL Player Retirement Plan*, No. ELH-12-634, 2012 WL 5882587, at *12 (D. Md. Nov. 20, 2012).  Moreover, "an administrator's discretionary decision will not be disturbed if reasonable, even if the court itself would have reached a different conclusion." *Doty*, 2012 WL 3065355, at *9 (citation and quotation marks omitted)). A decision to deny benefits is reasonable if it is "'the result of a deliberate, principled reasoning process and if it is supported by substantial evidence.'" *Doty*, 2012 WL 3065355, at

*9 (quoting *Evans v. Eaton Corp. Long Term Disability Plan*, 514 F.3d 315, 322 (4th Cir. 2008) (citation omitted)). Evidence that "'a reasoning mind would accept as sufficient to support a particular conclusion'" is considered substantial evidence. *Id.* (quoting *DuPerry v. Life Ins. Co. of N. Am.*, 632 F.3d 860, 869 (4th Cir. 2011)).

> To determine whether an administrator has abused its discretion, the court may consider:
>
> (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decisionmaking process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have.

*Champion v. Black & Decker (U.S.) Inc.*, 550 F.3d 353, 359 (4th Cir. 2008) (citation omitted); *see Doty*, 2012 WL 3065355, at *9 (quoting *Champion*). Here, I will consider foremost the language of the Policy, whether Defendant's "interpretation was consistent with . . . earlier interpretations of the [Policy]," and "whether the decisionmaking process was reasoned and principled." *See Champion*, 550 F.3d at 359.

As noted, the Policy provides that a "regular occupation . . . will . . . be considered to be a similar position or activity based on job descriptions included in the *most current edition* of the U.S. Department of Labor Dictionary of Occupational Titles (DOT)." Admin. Rec. 101-04. (emphasis added).   Curiously, Defendant relies on the DOT definition, even though the United States Department of Labor website notes that the DOT "has been replaced by the O*NET," http://www.onetonline.org.   *See* http://www.oalj.dol.gov/libdot.htm; Fed. R. Evid. 201 (providing that court may take judicial notice of facts that can be "accurately and readily determined from sources whose accuracy cannot reasonably be questioned").   While this is not unreasonable or unprincipled decisionmaking by Defendant based on case precedent, *see, e.g.*,

11

*Clark v. Unum Life Ins. Co. of Am.*, 852 F. Supp. 2d 663, 665 (D. Md. 2012) (noting DOT definition); *Berger v. Metro. Life Ins. Co.*, No. AW-08-76, 2009 WL 2366290, at *6 (D. Md. July 28, 2009) (same), Defendant should consider the most current definition, i.e., the O*NET definition, on remand, or explain its deviation from the Policy language.[2]

More fundamentally, Defendant's current interpretation of the Policy is not consistent with its earlier interpretations of the Policy. Indeed, considering the same Policy, Defendant concluded thrice previously that Plaintiff was eligible for short-term disability benefits and once previously that Plaintiff was eligible for LTD benefits. Moreover, in its initial grant of LTD benefits to Plaintiff, Defendant applied the same definition of Plaintiff's position that it applied in its denial of benefits. It is true that Defendant considered a wealth of additional evidence, including an independent record review, an independent occupational analysis, a report from a certified rehabilitation counselor, and evaluations by an orthopedic surgeon and a rheumatologist. Yet, Defendant has not identified substantial evidence to support a conclusion that Plaintiff's condition has improved or that its previous determinations were otherwise erroneous, such that Defendant's determination of disability should differ from its earlier determinations. *See Evans*, 514 F.3d at 322; *Doty*, 2012 WL 3065355, at *9. Rather, Defendant provides a "summary, . . . largely devoid of any analysis" with regard to how Plaintiff's LTD benefits eligibility status changed. *See Doty*, 2012 WL 3065355, at *11. Without this explanation from Defendant, I cannot on this record conclude that its "decisionmaking process

---

[2] In its Reply, Defendant argues that, in addition to consulting the DOT, it consulted the OASYS, "a vocational software program which provides information as to how an occupation may be performed." Def.'s Reply 11. And, it argues, it also had a certified rehabilitation counselor perform an independent occupational analysis of Plaintiff's regular occupation. Further, Defendant argues that it should not be criticized for not having used the O*Net, which replaced the DOT, because Plaintiff's own expert did not rely on it. *Id.* at 12. Absent from Defendant's Reply, however, is a discussion of what, if any, difference in result would occur if it did evaluate Plaintiff's medical condition as it relates to her regular occupation, if that occupation is assessed by use of the O*Net. On remand, Defendant should explain why it did not use the O*Net, or why, if it is used, the same result would be reached.

was reasoned and principled." *See Champion*, 550 F.3d at 359; *Doty*, 2012 WL 3065355, at *9. Rather, I cannot rule out the possibility that Defendant abused its discretion because it "did not engage in a reasoned and principled decisionmaking process and did not support its determination with substantial evidence." *See Doty*, 2012 WL 3065355, at *14. Therefore, summary judgment for Defendant is not appropriate at this time.

Nevertheless, Plaintiff has not shown that she is entitled to judgment as a matter of law. Rather, "[w]hen a plan administrator has abused its discretion, a district court may either reverse the decision or remand it to the administrator for further review." *See id.* Remand as a remedy "should be used sparingly." *Id.* (citation and quotation marks omitted). Yet, it is an appropriate remedy "when a case involves 'complex medical issues crucial to the interpretation and application of plan terms,'" and the plan administrator should reconsider the evidence with the guidance provided by the Court. *Giles*, 2012 WL 5882587, at *21 (quoting *Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1025 (4th Cir. 1993)). Here, the Administrative Record includes, and Defendant discussed in its denial of LTD benefits, substantial evidence in the form of medical records showing that Plaintiff may have been capable of performing the material duties of her position, if Defendant can provide a reasoned explanation for why Plaintiff initially but not ultimately qualified for LTD benefits. Thus, it is appropriate to order the Policy administrator to reconsider the evidence, including in its analysis an explanation of the change, if any, in Plaintiff's eligibility status. Accordingly, I will remand Plaintiff's claim for further administrative proceedings, in which it will be reconsidered in light of this Memorandum Opinion and Order.

**IV.   CONCLUSION**

For the reasons stated above, Defendant's Cross-Motion for Summary Judgment is DENIED, Plaintiff's Motion for Summary Judgment is DENIED, and Plaintiff's claim is REMANDED for further administrative proceedings.

So ordered.

Dated: <u>January 18, 2013</u>              <u>        /S/            </u>
                                             Paul W. Grimm
                                             United States District Judge

lyb